IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2016

**KELVIN TOWNSEL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 1400042 Chris Craft, Judge**

_____

**No. W2015-01641-CCA-R3-PC - Filed October 21, 2016**

_____

The Petitioner, Kelvin Townsel, appeals the denial of his petition for post-conviction relief in which he challenged his guilty plea to second degree murder and the resulting thirty-year sentence. On appeal, the Petitioner contends that he was denied his right to the effective assistance of counsel and that his guilty plea was not entered knowingly and voluntarily. We affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Monica A. Timmerman, Memphis, Tennessee, for the appellant, Kelvin Townsel.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Petitioner was indicted for first degree murder after police uncovered evidence linking him to the scene of the homicide of the victim, Timothy Nolen. The Petitioner pled guilty to second degree murder and, pursuant to the plea agreement, received a sentence of thirty years in confinement to be served at one hundred percent.

## Guilty Plea Submission Hearing

The relevant facts underlying the Petitioner's conviction, as recited by the State at the guilty plea hearing, are as follows:

[O]n August 16, 2013, Timothy Nolen was found shot to death outside of his car in Shelby County, Tennessee. Police happened upon the shooting as it happened. Evidence was found that pointed the evidence to Mr. Nolen.… Mr. Townsel was found in the area[] or picked up in the area by a friend who … could put Mr. Townsel in the area[.] [O]ther evidence pointed to Mr. Townsel[,] Mr. Townsel was picked up by police[,] and Mr. Townsel gave a statement admitting to shooting Mr. Nolen.

The Petitioner affirmed that he understood the plea agreement; that, by accepting the plea, he was waiving his right to plead not guilty, his right to a jury trial, his right to confront witnesses, his right to present a defense, his right to subpoena witnesses, and his right to testify; that he understood the crimes with which he was charged and their potential punishment; that he understood that he could appeal a potential conviction by trial and could not appeal his guilty plea conviction; and that he wished to waive his right to continue to trial and wanted instead to plead guilty. Upon finding that the Petitioner's decision to plead guilty was knowing, voluntary, and intelligent, the trial court accepted the plea.

## Post-Conviction Hearing

The Petitioner testified that the trial court appointed the Shelby County Public Defender's Office to represent him. The Petitioner said his original counsel discussed both the possibility of a trial and a plea agreement for a twenty-year sentence. His original counsel, however, withdrew upon being elected as a judge and was replaced by trial counsel.

The Petitioner testified that trial counsel met with him four to five times over the course of sixteen months. He said that, although trial counsel reviewed discovery materials with him, trial counsel did not "break [the discovery packet] down" "piece by piece." The Petitioner said he did not fully understand the "discovery packet [or] the evidence that the State had against [him]." He testified that trial counsel informed him that the State would present a witness who was at the crime scene and his own incriminating statement at trial.

The Petitioner maintained that he believed that he would receive a twenty-year sentence in exchange for pleading guilty. He acknowledged that he would be required to

serve one hundred percent of his sentence. He testified that he signed a judgment stating he received a thirty-year sentence as a Range I offender. He asserted that after he obtained the judgment while he was incarcerated, he learned that the standard range option was "scratched out" and that the multiple offender status was circled. The record confirms that the Petitioner's guilty plea judgment form appears as the Petitioner describes regarding the altered Range classification and contains a signature above the space designated "Defendant/Defendant's Counsel/Signature (optional)." At the plea hearing, the Petitioner acknowledged he understood he was pleading guilty as a Range II offender to thirty years' imprisonment.

The Petitioner testified that at the time of his guilty plea, he was on various medications for "post-traumatic stress syndrome," anxiety, and bipolar disorder, which he continues to take. He said he was not able to discuss the plea or the facts surrounding his plea with trial counsel before signing the plea agreement.

On cross-examination, the Petitioner clarified that he believed he was to receive a Range I sentence of fifteen to twenty-five years. He acknowledged that he was previously convicted of two unrelated homicides. He did not contest that he shot the victim.

Although trial counsel testified that he met with the Petitioner "several times," trial counsel could not recall how many times he met with the Petitioner before the guilty plea was entered. He said other members of the public defender's office, including investigators, had met with the Petitioner "several times." Trial counsel also testified that the Petitioner was informed of his right to go to trial and that the Petitioner ultimately decided to plead guilty to second degree murder as a lesser-included offense of first degree murder with a thirty-year sentence in light of the State's proof.

Trial counsel testified that he specifically remembered reviewing the evidence against the Petitioner with him because he had to get the Petitioner reading glasses so he could read the discovery packet. Trial counsel believed that the Petitioner was able to appreciate the extent of the evidence against him. Although trial counsel could not remember whether he specifically discussed with the Petitioner any issues related to mental health, he testified that, as with all of his clients, the Petitioner had his medical records reviewed by a mitigation specialist. Trial counsel did not believe that a mental health defense was a viable defense at the time of the plea. He further testified that, to his knowledge, the Petitioner's mental health and prescription medications did not interfere with the Petitioner's understanding of his guilty plea at the plea hearing.

Trial counsel said that he spoke with the Petitioner about the State's concern regarding their identification evidence. He told the Petitioner that the issue relating to

identification caused the State to begin discussing the possibility of seeking a second degree murder conviction or plea, rather than first degree murder. Trial counsel explained that he told the Petitioner about the potential for a fifteen percent reduction in a sentence for good behavior. Trial counsel testified that he discussed with the Petitioner that a second degree murder conviction is served at one hundred percent, regardless of range classification.

The post-conviction court denied the Petitioner relief, finding that the Petitioner received effective assistance of counsel and that his plea was knowingly, intelligently, freely, and voluntarily entered.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel when trial counsel failed (1) to disclose alleged exculpatory evidence to the Petitioner and (2) to review strategies to employ using the alleged exculpatory evidence. The Petitioner argues that due to these errors, along with "misinformation," "miscomprehension," and "ignorance," his guilty plea was not knowingly and voluntarily entered. The State responds that the Petitioner received the effective assistance of counsel and that the Petitioner's plea was voluntary and intelligent.

To obtain post-conviction relief, the Petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). Whether a guilty plea was knowing and voluntary and whether the Petitioner received the ineffective assistance of counsel are mixed questions of fact and law. *Id.*; *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Legal issues and mixed issues of fact and law are reviewed de novo without any presumption of correctness. *Vaughn*, 202 S.W.3d at 115.

### I.    Ineffective Assistance of Counsel

The Post-Conviction Procedure Act provides relief when a conviction or sentence is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel, and the denial of the effective assistance of counsel is a proper ground for post-conviction relief. *Vaughn*, 202 S.W.3d at 115-16. The right to counsel "encompasses the right to 'reasonably effective' assistance, that is, assistance 'within the range of competence demanded of attorneys in

criminal cases.'" *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To show that relief is warranted on a claim of ineffective assistance of counsel, the Petitioner must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007). Failure to show either deficiency or prejudice precludes relief. *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011). Deficiency can be shown by proving that counsel's acts or omissions were so serious that they fell outside an objective standard of reasonableness under prevailing professional norms. *Vaughn,* 202 S.W.3d at 116. "Upon our review of counsel's performance, 'we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time.'" *Finch*, 226 S.W.3d at 316 (quoting *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006)).

To show prejudice, the Petitioner must show a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *Vaughn*, 202 S.W.3d at 116. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Honeycutt*, 54 S.W.3d 762, 768 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 694). When a Petitioner challenges his guilty plea on the basis of ineffective assistance of counsel, the Petitioner must prove deficient performance and that "'there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 216-17 (Tenn. 2009) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The Petitioner argues that trial counsel failed to disclose additional exculpatory evidence to him and failed to explain the extent of the State's proof. The post-conviction court found that the Petitioner did not present any proof to substantiate this claim. We agree. The Petitioner failed to identify in his brief and during the evidentiary hearing the exculpatory evidence with which he maintains that trial counsel failed to provide him. The testimony of trial counsel, which was credited by the post-conviction court, established that the Petitioner was informed of the evidence, exculpatory and inculpatory, that was known prior to the plea agreement. Trial counsel was aware of issues with the State's identification evidence, which trial counsel testified was used as leverage to have the State consider a second degree murder plea bargain. The Petitioner has failed to show that trial counsel acted deficiently in communicating with him regarding the case or that he suffered any prejudice.

## II.     Voluntariness of Plea

The Petitioner argues that because of trial counsel's deficiencies his plea was not knowingly and voluntarily entered and that he would not have entered his guilty plea had he received effective assistance of counsel. A guilty plea is only valid if it is voluntarily, understandingly, and knowingly entered. *Howell*, 185 S.W.3d at 330. "In determining whether a guilty plea was knowingly and voluntarily entered, the standard, of course, is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Grindstaff*, 297 S.W.3d at 218 (quoting *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003)). Prior to accepting a guilty plea, the trial court must conduct an inquiry into the defendant's understanding of the proceedings to ensure the plea is knowing and voluntary. *Id.* at 218 & n. 11. Factors to be considered in evaluating the voluntariness of a plea include:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the trial court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* at 218 (quoting *Howell*, 185 S.W.3d at 330-31).

The transcript of the plea hearing shows that the trial court conducted a thorough examination of the Petitioner to ensure that the Petitioner understood the rights he was waiving in entering the plea. The testimony of trial counsel, which was credited by the post-conviction court, established that the Petitioner was informed regarding the discovery packet and sentencing. Although the Petitioner testified that he thought he was pleading to a twenty-year sentence, trial counsel testified that the Petitioner accepted a plea agreement with a thirty-year sentence and that the Petitioner was aware that a second degree murder conviction was served at one hundred percent, regardless of range classification. The post-conviction court credited trial counsel's testimony that the Petitioner was aware that the sentence was for thirty years' imprisonment. The plea hearing transcript also reflects that the Petitioner acknowledged his understanding of the length of the sentence. Insofar as he claims that medication or mental health issues rendered his plea involuntary and unknowing, the post-conviction court found that neither the Petitioner's understanding of the guilty plea itself nor his understanding of the guilty plea submission hearing was affected by his use of psychiatric drugs or mental illness.

In this case, the Petitioner testified during the guilty plea hearing voir dire examination that he held a college degree. He was familiar with criminal proceedings,

having pled guilty to two prior homicides. Trial counsel conferred with the Petitioner throughout the case, discussed alternatives, and was prepared to proceed to trial. Trial counsel informed the Petitioner of the potential sentences he could receive from a jury trial conviction. The evidence against the Petitioner was a strong inducement to plead guilty to avoid a greater penalty. Accordingly, we conclude that the plea was knowing and voluntary.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE